Filed 6/27/24  In re S.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, unless specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re S.V., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082400 |
| Plaintiff and Respondent, | (Super.Ct.No. J292540) |
| v. | OPINION |
| G.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Law Office of Michelle D. Peña and Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

The father of a dependent minor appeals from an order summarily denying his petition under Welfare and Institutions Code section 388 requesting another six months of reunification services.[1] We find no abuse of discretion and affirm the order.

FACTS

Defendant and appellant G.V. is the father of S.V. (born Nov. 2021).

In January 2022, the Riverside County child welfare agency filed a section 300 petition, alleging domestic violence between the child's parents and inappropriate physical discipline by father. The petition alleged mother had failed to protect the child by minimizing the abuse by father and maintaining a relationship with him. Mother also had an open dependency as to the child's older half-sibling arising from domestic violence and inappropriate discipline.[2] The juvenile court in Riverside took jurisdiction over the child under section 300, subdivision (b)(1). The family had moved, so the case was transferred to San Bernardino County for disposition.

In May 2022, plaintiff and respondent San Bernardino County Children and Family Services (department) recommended the child remain in parental custody with in-home, court-ordered supervision. Father had been reported to law enforcement as an "out of home perpetrator" of sexual abuse of minors in 2004 and 2014. In 2011, he was

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Although father denied ever meeting mother's older child, and both parents told social workers that mother's "boyfriend" who allegedly abused that child was a third party, father was identified as the "alleged abuser to the half-sibling." Mother's parental rights as to the half-sibling were terminated in April 2022.

2

arrested for sexual intercourse with a minor under Penal Code section 261.5, subdivision (c), leading to conviction on misdemeanor charges and a sentence of 36 months of probation, 60 days jail, and a fine. Father also had convictions for driving under the influence in 2012 and 2019, for which he received short jail sentences, probation, and fines. Nevertheless, despite that criminal history and mother's open dependency for the child's half-sibling, the department found the child "was not likely to be in immediate danger of serious harm." The parents' home was found "appropriate, with adequate provisions, and no safety hazards," and the child "was observed to be a happy and curious baby," with no "marks, bruises, redness, or diaper rash."

By June 2022, the department found the parents' progress in services was "insufficient." Although father had enrolled in services, he attended only a single class, in March 2022. He had tested negative for drugs three times in May and June 2022. The department conducted a "SDM Risk Assessment and Safety Assessment for the child to remain in the home," which found the home "'very high' for risk," but also found it was "'safe' to remain" there. There were "no current safety threats regarding the reasons for the open dependency case," including "no indication that the child has been neglected in the parent[s'] home, or that the parents have engaged in domestic violence while the child has been in their care."

At the June 2022 disposition hearing, minor's counsel requested the court remove the child from both parents. Instead, the court ordered the child detained from father, but

3

maintained with mother on the condition that father move out of the family home temporarily.

Later the same month, the department filed a subsequent petition under section 342, alleging father had not moved out. A social worker visiting mother's house had seen father's vehicle in the driveway, his shoes and hat by the entry of the home, and "a 70-inch television installation appeared to be in progress next to another pair of the father's shoes." The social worker "touched the rim of the inside of the hat, and felt moisture." The social worker also "heard an adult cough and a shuffling noise in the rear of the home, near the mother's bedroom." A search of the house, conducted with mother's permission, revealed father's belongings "in the master bedroom and closet, garage, hallways, and living room." Mother said she was home alone with the child, said she was installing the television herself, and denied father or any other adult was in the home. When later asked, father too denied he was at the house, claiming he had left behind items he did not need when he moved out. He told the social worker: "You searched the house, you didn't see me there," and "Yes, she told me you were opening closets but you didn't see me there after you searched the whole house even the garage." The social worker responded by noting that the backyard, which included a tent and a shed, was not searched. Father had no explanation for why his car was present at the home.

The juvenile court detained the child from mother, placed her in the custody of the department, and ordered supervised visitation for the parents.

In several addendum reports, the department recommended removing the children from parental care and offering father (but not mother) reunification services. Father was participating in some services, including parenting and anger management classes, but had twice refused to take a domestic violence class. Also, he had been terminated from individual counseling. He had attended only six sessions out of eight, and had failed to make adequate progress. His therapist reported father "denied and minimize[d]" his history as a perpetrator of sexual abuse and domestic violence, as well as "past alcohol abuse," and "continue[d] to deny and blame [the department] for their involvement." Father failed to show for drug testing three times, once in June 2022 and twice in July 2022. Although father visited with the child, he was "increasingly uncooperative and verbally aggressive" with staff supervising the visits. Father also made repeated accusations of abuse or neglect of the child by the foster parents, but after investigation the department concluded they were unfounded.

At the October 2022 contested jurisdiction and disposition hearing on the section 342 petition, the court sustained the allegations, removed the child, and ordered reunification services for father. It bypassed reunification services for mother under section 361.5, subdivision (b)(10) and (11).

In April 2023, the department recommended terminating father's services and setting a section 366.26 hearing "to establish a permanent plan of adoption" by the child's current foster parents, who said they would adopt her. Father had completed his services, including domestic violence and individual counseling, and his therapist noted

"significant progress." He had visited "consistently" with the child since December 2022. He had drug tested as required, and passed those tests, and he "acknowledged that he had a history of DUI's in the past but is not drinking now."

Nevertheless, father continued to deny the issues—both his own and mother's—that led to the child's dependency, as well as that of the child's half-sibling. Father and mother continued to live together, and said they intended to "stay together." When told the child could not return home if mother lived in the home, father said "mother could move out," and that he would rent her an apartment. The department was concerned, however, that the parents would separate to regain custody and reunify once the case closed.

Over father's objection, the juvenile court terminated his services and set a section 366.26 hearing.

In August 2023, father filed a section 388 petition requesting reinstatement of reunification services. The petition described him as "a single father," and said he "no longer resides" with mother. He had "a job, income and stable home," as demonstrated by an employment offer letter and photos of "his home." He had "certificates of completion showing participation in or completion of counseling including domestic violence." He was "living a sober life as shown by his drug testing results showing clean drug tests." The petition expressed father's belief that reunification was in the child's best interests based on the "strong relationship bond" with her "which he has maintained by frequent visits." He "acknowledge[d] the seriousness of the problem leading to

6

dependency" and said he "overcame this problem through his unending love for his child along with his continued faith and hope in God." In his supporting declaration, he also credited the services he had received, saying: "It all finally sunk in!! In taking therapy sessions, group meetings, anger management, domestic violence, and weekly drug testing, I have recognized my capabilities."

The department opposed father's section 388 petition, noting that the problem was not completion of services, which occurred before April 2023, but that father had shown no apparent benefit from those services. Also, the department could not confirm that mother had in fact moved out, noting reports that they continued to "arrive and leave together" from visits. Father continued to deny any involvement in the abuse of the child's older half-sibling, demonstrating a continued lack of "insight," despite completing his services. He also continued to repeat unfounded allegations that the child was being mistreated by her current caregivers, showing "he still has a misunderstanding of the child's basic needs being met with the current prospective adoptive family." The social worker emphasized that it "is documented that the child is being treated well in the prospective adoptive home," and that her current caretakers had "nurtured, engaged, and provided a stable home" for her since June 2022.

The juvenile court denied father's section 388 petition without holding an evidentiary hearing. The trial court stated that, in light of the child's age and the motion father filed, the situation "does not jive with the child's best interest." The court also stated that father's situation is "changing" and "fluid" but "not set." In all, the court

stated the motion "in no way purports to show me it's in the best interest of this child to promote a formal hearing."

DISCUSSION

Father argues the juvenile court abused its discretion by summarily denying his section 388 petition. We are not persuaded.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] The [petitioner] bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. [Citation.] Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought." (*In re A.A.* (2012) 203 Cal.App.4th 597, 611-612.)

Whether a petitioner makes a prima facie showing entitling him or her to a hearing "'depends on the facts alleged in [the] petition, as well as the facts established as without dispute'" by the court's records. (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.) "In considering whether the petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.)

We do not disturb a juvenile court's summary denial of a section 388 petition absent an abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158; *In re*

8

*Stephanie M.* (1994) 7 Cal.4th 295, 318.) Abuse of discretion is found where the juvenile court "'"'exceeded the bounds of reason"'"' and the determination was "'"'arbitrary, capricious, or patently absurd."'"' (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our own decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

We will assume that father's declaration in support of his petition constitutes new evidence sufficient to satisfy the first prong of the section 388 prima facie analysis. Father averred that he was single and that mother had moved out, that the lessons he learned in therapy and classes had "finally sunk in," and that he was ready to "take[] responsibility and ownership of [his] own actions, reactions and consequences." If credited, that would be a material change in circumstances. The department may well have had good reason to doubt father's veracity or the depth of his recent insights. The trial court found that father's situation was "fluid" rather than changed. Arguably, a decision to credit other, contrary evidence over father's declaration is a factual dispute best resolved in an evidentiary hearing.

Nevertheless, we find no abuse of discretion in the juvenile court's ruling that father failed to make a prima facie showing that reinstating his services would be in the child's best interests. "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount." (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) Rather, the goal is to address the child's

9

need for "permanency and stability." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) Here, the child was in the care of a prospective adoptive family that had "nurtured, engaged, and provided a stable home" for her since June 2022, most her life. We find nothing arbitrary, capricious, or patently absurd in the trial court's decision that the child's best interests "are not to further delay permanency and stability in favor of rewarding" father for belated "efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527; accord *In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved on another ground by *In re Caden C.* (2021) 11 Cal.5th 614 ["[D]elaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests"].) Father's assertion that he had developed a "strong relationship bond" through frequent supervised visits does not show the juvenile court abused its discretion in denying father's section 388 petition without an evidentiary hearing.

DISPOSITION

The summary denial of father's section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

11